UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN JOE GOMEZ, | No. C 06-5936 SI (pr) |
| Plaintiff, | **ORDER GRANTING SUMMARY JUDGMENT MOTION** |
| v. | |
| CHARLES DUDLEY LEE; CAROLINE RATES, | |
| Defendants. / | |

## INTRODUCTION

This is a pro se prisoner civil rights action in which the plaintiff complained about the response to his medical needs by prison officials. This action is now before the court for consideration of defendants' unopposed motion for summary judgment. For the reasons discussed below, defendants' motion will be granted and judgment will be entered in their favor.

## BACKGROUND

Gomez alleged in his complaint that defendants refused to give him knee surgery that had been ordered by an orthopedic surgeon and did not give him pain medication for seven months. The court found that the complaint stated a claim for an Eighth Amendment violation and ordered service of process on the health care manager and an inmate appeal reviewer who were named as defendants. The other two defendants (a warden and assistant warden) were dismissed as no wrongdoing was alleged for them.

The following facts are undisputed unless otherwise noted:

Steven Joe Gomez was a prisoner at Salinas Valley State Prison in 2005. He was transferred out of Salinas Valley on an unidentified date and was at the correctional institution in Tehachapi when he filed his complaint in September 2006.

Defendant Charles Lee, M.D. was the health care manager and chief medical officer for Salinas Valley in 2005. His job was to administer and manage the health care system at the prison. He did not serve as a clinical physician but did occasionally consult with the chiefs of the various departments about prisoner-patients. Dr. Lee's involvement in Gomez's case was limited to reviewing and responding to Gomez's inmate appeal (log. no. SVSP D 05-2273).

Defendant Caroline RATES worked at Salinas Valley as an associate governmental program analyst in the health care services unit. She was a licensed vocational nurse in 2005. Her involvement in this case was limited to reviewing Gomez's medical records in connection with his inmate appeal.

Gomez was injured in a prison riot on January 28, 2005. Although the medical records indicate his injuries were more extensive than a knee injury, his complaint is limited to the medical response to his injured knee. See Maiorino Decl., Exh. A, AGO-MED0051 (emergency medical transfer sheet dated January 28, 2005, referring to puncture wounds on chest and back).

Gomez received medical care for his knee throughout 2005. He was seen by a primary care provider on eight occasions in 2005 and received medical treatment for his knee condition.

Radiologic imaging of the knee was done. His knee was x-rayed at the Natividad Medical Center on January 28, 2005; the report stated that there was no evidence of fracture dislocation, the bony alignment was within normal limits, and the soft tissue was normal. His knee was x-rayed again on March 15, 2005; the report stated that there was a "questionable bony fragment" that could be "an artifact," and the knee otherwise had a fairly normal appearance. AGO-MED-0057. He had an MRI on March 23, 2005. According to Dr. Lee, the MRI report stated that damage to the cartilage in the knee was noted, but it could not be determined if the damage was old or related to the January 28 incident. The report also noted that there was fluid on the knee.

Gomez received pain medications during 2005. During the course of the year he was

2

prescribed various pain medications which addressed pains of different levels of severity. See Lee Decl., ¶7; Maiorino Decl., Exh. A, AGO-MED-0015 to AGO-MED-0034 On January 31, 2005, he was prescribed Roxicodone and Tylenol. On February 4, he was prescribed Vicodin. On July 21, 2005, he was prescribed Naproxen. On August 12, he was prescribed Tramadol and Ibuprofen. Dr. Lee opined that Gomez "received appropriate pain-management therapy that fell well within the standard of care that a similarly situated person could expect to receive from the medical community." Lee Decl., ¶ 7.

Gomez received several referrals for physical therapy and orthopedic consultations in the months following his injury. He was seen by Dr. Pompano, an orthopedic surgeon, for a surgical consultation on June 28, 2005. The records indicate that Dr. Pompano recommended surgical repair of the knee.

Gonzales also was examined on June 28, 2005, by Dr. C. Benjamin Ma at U.C. San Francisco Sports Medicine. Dr. Ma recommended a knee brace to see whether it would increase Gomez's stability and possibly avoid knee surgery. It is not clear whether Gonzales left Dr. Ma's office with a knee brace or only a recommendation for a knee brace.

Based on Dr. Pompano's recommendation on June 28, 2005, Gomez was referred to an orthopedic surgeon by the time Dr. Lee received his inmate appeal on September 16, 2005. Dr. Lee states that because the type of procedure contemplated for Gomez was not performed at Salinas Valley, Gomez would be referred to an outside provider. Like other patients, a prisoner-patient must wait for an appointment with the medical provider. Because Gomez's situation was not an emergency, the waiting period could be from a few weeks to a few months. Dr. Lee states that Gomez was referred to U.C. San Francisco for orthopedic surgery, but was transferred out of Salinas Valley before the surgery was done.

Gomez also was referred to prosthetics and the podiatry clinic, where a podiatrist referred him for orthopedic shoes with functional orthotics. When Dr. Lee reviewed the inmate appeal on September 16, it could not be determined whether Gomez had actually received his knee brace, so Gomez was immediately referred to the orthotics clinic to be evaluated and measured for a hinged knee brace. On December 16, Gonzales refused to accept his prescribed orthotics.

3

Caroline RATES was an analyst and not a medical care provider. As an analyst, her role was administrative; she did not have authority or responsibility to conduct medical examinations, prescribe medications, or refer inmates to outside medical providers for care. It is undisputed that she was not familiar with Gomez before he filed his inmate appeal (log no. SVSP 05-2273). In connection with Gomez's inmate appeal, she reviewed his medical records for evidence related to his contentions in his appeal and summarized pertinent facts related to his treatment. Once this was done, her job duties were completed. Her summary was provided to Dr. Lee for his review and approval.

**VENUE AND JURISDICTION**

Venue is proper in the Northern District of California because the events or omissions giving rise to the claims occurred in Monterey County, which is located within the Northern District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.") The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

1  Celotex, 477 U.S. at 324 (citations omitted.) The court's function on a summary judgment
2  motion is not to make credibility determinations or weigh conflicting evidence with respect to
3  a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626,
4  630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving
5  party, and the inferences to be drawn from the facts must be viewed in a light most favorable to
6  the nonmoving party. See id. at 631.

7  On issues as to which the moving party bears the burden of proof at trial -- such as the
8  qualified immunity defense in this case -- he must come forward with evidence which would
9  entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v.
10 Smith, 965 F.2d 1532, 1536 (9th Cir. 1992). He must establish the absence of a genuine issue
11 of fact on each issue material to his affirmative defense. Id. at 1537. Once the moving party has
12 come forward with this evidence, the burden shifts to the non-movant to set forth specific facts
13 showing the existence of a genuine issue of fact on the defense.

14 A verified complaint may be used as an opposing affidavit under Rule 56, as long as it
15 is based on personal knowledge and sets forth specific facts admissible in evidence. See
16 Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's
17 verified complaint as opposing affidavit where, even though verification not in conformity with
18 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct,
19 and allegations were not based purely on his belief but on his personal knowledge). Gomez's
20 complaint was signed under penalty of perjury and therefore may be considered in deciding the
21 motion for summary judgment.

### DISCUSSION

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 102-04 (1976). To prove that the response of prison officials to a prisoner's medical needs was constitutionally deficient, the prisoner must establish (1) a serious medical need and (2) deliberate indifference to that need by prison officials. See McGuckin v. Smith, 974 F.2d

5

1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). The subjective prong standard is the same for the medical needs claim as for the safety claim: a prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. See Farmer v. Brennan, 511 U.S. 825, 837, 844 (1994). A mere difference of opinion as to which medically acceptable course of treatment should be followed does not establish deliberate indifference. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); see also Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Defendants urge that they are entitled to summary judgment on two grounds: the undisputed evidence shows that the medical care provided was adequate and the individual defendants did not act with deliberate indifference to Gomez's medical needs. The court has considered the factual statements in the verified complaint as evidence in opposition to summary judgment, but even doing so does not help Gomez because he has failed to show a triable issue of fact on his claim.

Defendants presented undisputed evidence showing that Gomez did receive care (including doctor visits, radiologic imaging, physical therapy, and pain medications) in the months following his knee injury on January 28, 2005. Defendants also presented undisputed evidence that orthopedic surgery was first recommended for Gomez on June 28, 2005 but it took several months for him to be scheduled for surgery because Gomez had to wait for surgeon availability. Defendants presented undisputed evidence that Gomez was referred to U.C. San Francisco for orthopedic surgery but was transferred out of Salinas Valley before the surgery could occur. (Plaintiff did not file a substantive opposition to defendants' motion for summary judgment, and the record does not disclose whether the orthopedic surgery ever in fact took place after plaintiff's transfer to another facility.) Defendants also presented undisputed evidence that neither of them were the health care providers for Gomez: Dr. Lee only learned of the case when he worked on the inmate appeal (for which he signed the second level review response dated September 16, 2005). Defendant Kane's involvement was limited to investigating and summarizing Gomez's medical records for the inmate appeal reviewer. By the time defendants

became aware of Gomez's situation, he had received some treatment, surgery had been recommended and he was waiting to be scheduled with an outside provider for orthopedic surgery. Against this evidence, the extremely brief allegations of a denial of surgery and denial of pain medicine in the complaint were insufficient to show a triable issue of fact. Gomez's failure to go further than these allegations is fatal to his case in light of defendants' presentation in support of their motion for summary judgment. Defendants have met their burden on summary judgment of showing the absence of evidence that they acted with deliberate indifference to Gomez's serious medical needs. Even viewing the evidence in the light most favorable to Gomez (as the non-movant), defendants are entitled to judgment as a matter of law on the Eighth Amendment claim.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED. (Docket # 13.) Judgment will now be entered in favor of all defendants and against plaintiff. The clerk shall close the file.

IT IS SO ORDERED.

Dated: January 23, 2008

_____
SUSAN ILLSTON
United States District Judge